## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **TEMPUS, INC.** | ) | |
| **1201 New York Avenue NW** | ) | |
| **Suite 300** | ) | |
| **Washington, DC 20005** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 1:19-cv-2590** |
| | ) | |
| **BRAD WARD** | ) | |
| **5307 16th Street North** | ) | |
| **Arlington, Virginia 22205** | ) | |
| | ) | |
| **CAMBRIDGE MERCANTILE CORP.** | ) | |
| **d/b/a CAMBRIDGE GLOBAL PAYMENTS** | ) | |
| **1350 Broadway, Suite 810** | ) | |
| **New York, NY 10018** | ) | |
| | ) | |
| **Serve: Corporation Service Company** | ) | |
| **1090 Vermont Ave. NW** | ) | |
| **Washington, DC 20005** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## COMPLAINT

Plaintiff Tempus, Inc. ("Tempus"), by and through its undersigned counsel, for its Complaint against Cambridge Mercantile Corp. d/b/a Cambridge Global Payments ("Cambridge") and Brad Ward ("Ward"), hereby states as follows:

## INTRODUCTION

1.      In this Action, Tempus seeks damages and injunctive relief for the injuries caused, by Ward, a former Director of Tempus, and by Cambridge, Ward's current employer and a competitor of Tempus (collectively, the "Defendants").

2.     Tempus seeks relief against Ward for his breaches of the confidentiality and non-solicitation clauses of his Employee Confidentiality, Non-Competition and Intellectual Property Agreement ("Confidentiality Agreement") with Tempus, his theft of trade secrets, and for related torts.   Tempus also seeks relief against Cambridge for its tortious interference with the Confidentiality Agreement and improper and wrongful possession of, interference with, and misappropriation of Tempus' trade secrets, confidential and proprietary information.

## PARTIES

3.     Tempus is a District of Columbia corporation that is organized, authorized to do business, and conducting business in the District of Columbia.   Tempus is a leading provider of foreign exchange and international payment solutions to businesses around the world.   Tempus' headquarters is located at 1201 New York Avenue, Suite 300, Washington, DC 20005.

4.     Ward is a resident of Arlington, Virginia and a former employee of Tempus who was employed by Tempus in this District.   He held the position of Director at the time he resigned his employment with Tempus in April 2018.   At all times during Ward's employment with Tempus, Tempus entrusted Ward with its confidential and proprietary information.

5.     Cambridge is a New York corporation providing foreign exchange and global payment services to businesses worldwide.   Cambridge's US headquarters is located at 1350 Broadway, Suite 810, New York, NY 10018.   Cambridge operates an office of its business in this District, where it currently employs Ward.   Cambridge is a direct competitor of Tempus.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over this matter pursuant to 18 U.S.C. § 1836(c) because this is an action under the federal Defend Trade Secrets Act, and pursuant to

28 U.S.C. § 1332, based upon the diversity of citizenship of the parties and that the amount in controversy is in excess of $75,000.00.

7.      This Court has personal jurisdiction over both Ward and Cambridge because each of legal claims outlined below arose from conduct undertaken by Defendants in the District of Columbia.

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred within this venue.

## BACKGROUND

### Ward's Confidentiality and Non-Solicitation Obligations to Tempus

9.      Ward commenced his employment with Tempus as a Consultant in April 2003. Tempus subsequently promoted Ward to the positions of Senior Consultant in April 2009, Manager in January 2012, and Director in January 2015.  Prior to commencing employment with Tempus, Ward had not previously been employed in the business of providing foreign exchange and international payment solutions to businesses.

10.     On December 12, 2012, Ward entered into the Confidentiality Agreement with Tempus as a condition of and in consideration for his continued employment.  A copy of the Confidentiality Agreement is attached and incorporated by reference as Exhibit 1.

11.     Ward understood and freely and voluntarily accepted all of his obligations under the Confidentiality Agreement by executing it on December 12, 2012.

12.     In its recitations, the Confidentiality Agreement states that Ward "will be given or have access to and may create Confidential Information about [Tempus' and its clients and customers, the improper use or disclosure of which could interfere with or disrupt [Tempus'] business." Exhibit 1 at 1.

13.     In Section 2 of the Confidentiality Agreement, Ward agreed "(i) not to disclose Confidential Information to unauthorized persons, (ii) not to copy or use Confidential Information for unauthorized purposes, and (iii) to comply with any procedures that Employer may adopt to preserve the confidentiality of Confidential Information."  Exhibit 1 at ¶ 2.

14.     The Confidentiality Agreement defines "Confidential Information" as "any information, whether or not reduced to writing, (i) that is not generally known in [Tempus'] trade or industry, (ii) that Employer treats, or is obligated to treat, as confidential, and (iii) that Employee may create or have access to as a result of his[] employment with Employer and the physical embodiments of such information in any tangible form."  *Id.*

15.     The Confidentiality Agreement further defines "Confidential Information" to specifically include "the names of any customers or prospective customers of the Employer."  *Id.*

16.     In Section 5 of the Confidentiality Agreement, Ward also agreed that he would not, for a period of 16 months after the termination of his employment with Tempus:

(i)     interfere with, disrupt or attempt to disrupt the relationship, contractual or otherwise, between the Employer and, any of its customers, suppliers, or employees.

(ii)    sell, offer to sell, or solicit any orders for the provision of currency exchange services or electronic transmission of foreign currency payments (collectively the "Tempus' Services") from any individual or entity who/which was a customer of Employer for Tempus' Services during the one (1) year preceding the termination of the employment of the Employee.

(iii)   sell, offer to sell, or solicit any orders for the purchase of any of Tempus' Services to or from any individual or entity to which the Employee had sold Tempus' Services on behalf of Employer within the one ( 1) year preceding the termination of the employment of the Employee.

(iv)    sell, offer to sell, or solicit any orders for the purchase of any of Tempus' Services to or from any individual or entity to whom/which the Employee had made a proposal or pitch to provide Tempus' Services on behalf of Employer within the one ( 1) year preceding the termination of the employment of the Employee.

4

(v)    sell, offer to sell, or solicit any orders for the purchase of any of information within the one ( 1) year preceding the termination of the employment of the Employee.

(vi)    sell to any customer the same products that Employee sold or attempted to sell to that customer during Employee's last year of employment with the Company.

(vii)    assist any person or entity (other than the Company) to pursue a contract to provide the same services that Employee either performed for that customer or about which Employee learned Confidential Information during his or her last year of employment with the Company.

Exhibit 1 at ¶ 5(i) – (vii).

17.    Ward also acknowledged and agreed that the provisions of Section 5 "(i) are reasonable in all respects, including but not limited to the time, scope and geographical limitations, (ii) are no greater than necessary to protect the Company's business from unfair competition, and (iii) will not place an undue burden on Employee's ability to earn a livelihood upon termination of his or her employment relationship with the Company.  Employee agrees that these provisions shall be enforced to the maximum extent permitted by the law."

17.    Ward further acknowledged that his failure to comply with his obligations in the Confidentiality Agreement would cause Tempus to suffer "irreparable injury and harm, the full extent of which will or may be impossible to ascertain, and for which monetary damages will not be an adequate remedy" and that Tempus would be entitled to injunctive relief.  Exhibit 1 at ¶ 5(d). Ward further agreed that, in the event Tempus was successful in enforcing the non-solicitation provisions of the Confidentiality Agreement, Tempus would be entitled to recover its reasonable attorneys' fees. *Id.*

**Tempus' Business Interests**

18.     Tempus' Confidential Information and client relationships are highly valuable, and are essential to the successful operation of its businesses.  Tempus has legitimate business interests in protecting its business operations from harm through improper, unauthorized, and unfair competition.

19.     Tempus developed its Confidential Information over the course of many years through the significant expenditure of time and money by Tempus.  It would be extremely difficult for Tempus competitors to duplicate Tempus' Confidential Information without similar expense and effort.

20.     Tempus' business relationships with its clients are of a type that normally continue unless interfered with by others.

21.     During his employment with Tempus, Tempus provided and entrusted Ward with Tempus' Confidential Information, including, but not limited to, information concerning client relationships, customer names and contact information customers business needs, information about customers corporate structure, information about customers' needs for foreign exchange of currency, and information about customers patterns in utilizing foreign currency exchanges.

22.     In connection with his employment, Tempus provided Ward with a computer and access to Tempus' computer network.  The Confidential Information provided by Tempus to Ward is maintained on Tempus' computer network and was accessible to Ward using his computer and network access.  Tempus' computer network is physically located at its headquarters in the District of Columbia.

23.     During his employment with Tempus, Tempus also trained and entrusted Ward to maintain and develop client relationships for the sole benefit of Tempus.

24.     The clients served by Ward during his employment with Tempus either were existing clients of Tempus or were developed based on Tempus' marketing efforts and superior reputation in the industry and while Ward was being compensated by Tempus.

**Ward's Breach of His Confidentiality Agreement and Cambridge's Tortious Conduct**

25.     On information and belief, Ward began to actively seek new employment with one or more competitors of Tempus in or around late 2017 or early 2018.

26.     On January 3, 2018, Ward sent an email from his Tempus email account to his personal Gmail account attaching an excel spreadsheet entitled "2017 Client Quick Call List" (the "Client List").  The Client List contained detailed contact information for more than 200 companies, along with names of contacts and email addresses for those contacts, which were clients and potential clients of Tempus with whom Ward interacted on behalf of Tempus as an employee of Tempus.

27.     On information and belief, at the time Ward sent the Client List to his personal email account, he was beginning to actively seek new employment with a competitor of Tempus because he was unhappy with his commission structure at Tempus.

28.     There was no Tempus-related business purpose for Ward to send the Client List to his personal Gmail email account.

29.     On information and belief, Ward remains in possession of the Client List.

30.     On information and belief, Ward has used the Client List to contact Tempus clients and prospective clients during the 16 months period following his separation from Tempus.

31.     On January 3, 2018, Ward also forwarded to his personal email account some Microsoft Word documents containing strategic notes, "how-to's," and scripts for prospective

client calls and pitches that were developed during his employment with Tempus ("the Proprietary Sales Process Documents").

32.     The Proprietary Sales Process Documents that were forwarded by Ward to his personal Gmail account on January 3, 2018, contained proprietary information and/or works for hire that belonged to Tempus, and he did not have authority to divert those proprietary documents to his own personal use.

33.     Ward's actions on January 3, 2018 evidence his premeditated intent to use Tempus' confidential information to solicit Tempus' clients and prospective clients with whom he dealt during his employment with Tempus.

34.     Subsequently Ward provided Tempus notice of his intent to resign from his employment with Tempus.  Ward's last day of employment with Tempus was April 6, 2018.

35.     Following his departure, Ward was sent a letter by Tempus reminding him of his obligations under the Confidentiality Agreement.

36.     In April 2019, Tempus became aware that Ward was soliciting its customers in direct contravention of one of his legal obligations under Section 5 of the Confidentiality Agreement.

37.     On information and belief, during the 16-month restricted period, Ward sent emails and made phone calls to several Tempus customers on behalf of Cambridge, seeking to solicit business.

38.     On information and belief, Ward's management at Cambridge was aware of and approved of his solicitation of these Tempus customers.

39.     On information and belief, Ward used the Client List and Proprietary Sales Process Documents to aid his unlawful solicitations of Tempus customers.

40.     On information and belief, as a result of these unlawful solicitations: (i) at least one Tempus customer has switched its business to Cambridge; (ii) at least one customer was able to leverage an offer made by Ward during an unlawful solicitation to negotiate a reduced fee from Tempus; and (iii) Tempus has been forced to reduce its fees for several additional clients who it believed Ward had, or intended to, unlawfully solicit.

41.     Although, based upon the information it received, Tempus would have been fully within its rights to pursue injunctive action against Ward based on Section 5(d) of the confidentiality agreement, Tempus attempted to reach out to Ward to gain his assurance that he would cease and desist his impermissible activities.

42.     By letter dated April 24, 2019, Tempus, by its legal counsel, sent Ward a letter discussing his obligations under, and violations of, the Confidentiality Agreement.  Enclosed with the letter was a copy of the Confidentiality Agreement.  In the letter, legal counsel for Tempus demanded that Ward: (1) immediately cease and desist from any and all actions that violate his non-solicitation and other commitments under the Confidentiality Agreement; and (2) provide counsel for Tempus with written assurance that he (Ward) would abide by each of his commitments under the Confidentiality Agreement.

43.     On April 29, 2019, the General Counsel of Cambridge responded to the April 24 letter from Tempus on behalf of both Cambridge and Ward.  In her letter, legal counsel for Tempus did not provide any assurance that Ward had complied or would comply with his obligations under the Confidentiality Agreement.  Rather, legal counsel for Cambridge requested additional information concerning the basis for Tempus' claim, including District of Columbia caselaw regarding post-employment obligations like those entered into by Ward.

44.     On May 8, 2019, legal counsel for Tempus sent a letter to the General Counsel for

Cambridge, providing her with the additional information she requested, including detailed legal

citations relating to and supporting the enforceability of Ward's obligations under the

Confidentiality Agreement.   Included in the letter was the following explanation of applicable

law under District of Columbia case law:

> You have asked for "supporting District of Columbia case law supporting a
> sixteen month non-solicit time period as being a reasonable restraint of trade."
> With respect to your request, there are numerous decisions by courts in the
> District of Columbia enforcing restrictive covenants with comparable and even
> longer temporal durations. For purposes of this letter, however, I draw your
> attention to the following cases:
>
> • *Deutsch v. Barsky*, 795 A.2d 669 (D.C. 2002) (finding that 24-month
>   noncompetition covenant was enforceable)
>
> • *Ellis v. James V. Hurson Assocs., Inc.*, 565 A.2d 615 (D.C. 1989) (finding
>   that 36-month nonsolicitation covenant was enforceable)
>
> • *Mercer Management Consulting, Inc. v. Wilde*, 920 F. Supp. 219 (D.D.C.
>   1996) (finding that 12-month noncompetition covenant was enforceable)
>
> • *Meyer v. Wineburgh*, 110 F. Supp. 957 (D.D.C. 1953) (enforcing 60-
>   month nonsolicitation covenant)
>
> • *Morgan Stanley DW, Inc. v. Rothe*, 150 F. Supp. 2d 67 (D.D.C. 2001)
>   (enforcing 12-month nonsolicitation covenant)
>
> • *Robert Half Int'l Inc. v. Billingham*, 315 F. Supp. 3d 419 (D.D.C. 2018)
>   (enforcing 12-month nonsolicitation covenant)

45.     In that same letter, Tempus, by counsel, sought certain assurances from Ward and

Cambridge.

46.     On May 17, 2019, the Cambridge General Counsel responded to the May 8, 2019,

letter, by refusing to provide any of the written assurances or other terms requested by Tempus in

the May 8, 2019 letter.

47.     Instead, the General Counsel of Cambridge, in her May 17, 2019 letter, rejected

the legal analysis provided by counsel for Tempus and wrote:

I refer to your letter dated May 8, 2019 regarding your client Tempus.

Thank you for your detailed response to our questions.

Based on the information you provided there does not appear to be any jurisprudence that supports a non-solicit period that exceeds twelve months for a sales person.

Based on the information you provided there does not appear to be any jurisprudence that supports ongoing employment as adequate and/or fresh consideration to sign a(nother) restrictive covenant agreement during employment.

48.     On May 30, 2019, in a final attempt to reach a resolution of Ward's breaches through means other than the court system, Tempus, by counsel, sent a third letter to the Cambridge General Counsel concerning Ward's post-employment obligations and conduct.  In the May 30 letter, Tempus, by counsel, informed the General Counsel of Cambridge of Ward's misappropriation of the Client List in the January 3, 2018, email referenced above.

49.     On June 3, 2019, the General Counsel of Tempus responded via email by claiming that Cambridge did not have any knowledge of the client list ("If Mr. Ward sent information to his gmail address in January 2018, as you suggest, he has not shared same with Cambridge.")

50.     Although she purported to be representing the interests of both Ward and Cambridge (she indicated she would accept service of process on behalf of both), she did not deny that Ward had sent himself the Client List, that he still possessed the Client List, or that he had used the Client List to contact customers of Tempus.

51.     Subsequently, while in the process of preparing this Complaint, counsel for Tempus was contacted by outside counsel for Cambridge and Ward.

52.     Although counsel engaged in good faith and civil conversations, once again, Cambridge and Ward would not commit to compliance with the Confidentiality Agreement or an extension of the Confidentiality Agreement.

53.     On information and belief, Ward is still in possession of, and is continuing to misuse Confidential Information of Tempus to target and solicit Tempus clients formerly serviced by Ward during his employment with Tempus, in direct violation of the Confidentiality Agreement.

54.     On information and belief, Ward is continuing to solicit Tempus clients to divert their business and relationships from Tempus to Cambridge with Cambridge's knowledge and approval.

## COUNT I

## BREACH OF CONTRACT
**(Against Defendant Ward For Misappropriation of Confidential Information)**

55.     Tempus restates and incorporates by reference the allegations contained in Paragraphs 1 through 54 hereof as if fully set forth herein.

56.     The Confidentiality Agreement between Tempus and Ward is valid, binding, and enforceable.

57.     Ward received good and valuable consideration for the promises made in the Confidentiality Agreement in the form of continued employment with Tempus for an additional period of more than five years following his execution of the Agreement.

58.     The Client List is "Confidential Information" under the Confidentiality Agreement.

59.     The Proprietary Sales Process Documents is "Confidential Information" under the Confidentiality Agreement.

60.     While employed by Tempus, Ward breached his contractual obligations under Section 2 of the Confidentiality Agreement by emailing himself the Client List and the Proprietary Sales Process Documents, which created copies of Tempus' Confidential Information.

61.     On information and belief, Ward continues to breach his contractual obligations under Section 2 of the Confidentiality Agreement by using the Client List and the Proprietary Sales Process Documents to improperly target and solicit Tempus clients and divert their business and relationships from Tempus to Cambridge.

62.     As a result of his contractual breaches, Ward has caused:  (i) the diversion of Tempus resources to efforts to halt Ward's breaches; (ii) the reallocation of additional Tempus resources to Tempus clients improperly solicited by Ward; (iii) the diversion of client income from Tempus to Cambridge; and (iv) harm to Tempus' business reputation and goodwill.

63.     Tempus is therefore entitled to a judgment against Ward for compensatory damages, reasonable attorneys' fees, and such other and further relief as the Court deems fair, just, and equitable.

## COUNT II

### BREACH OF FIDUCIARY DUTY/DUTY OF LOYALTY
#### (Against Defendant Ward)

64.     Tempus realleges and incorporates by reference the foregoing Paragraphs 1 through 63 hereof as if fully set forth herein.

65.     Ward, as an employee whom Tempus entrusted with client relationships and Confidential Information, had a fiduciary duty and duty of loyalty to Tempus.  This duty required Ward to act with utmost good faith and loyalty toward his employer, Tempus.  Ward

was duty bound not to act adversely to the interests of Tempus by, among other things, misappropriating Confidential Information of Tempus and using it on behalf of a competitor.

66.     Ward breached his fiduciary duty and duty of loyalty to Tempus by, on information and belief, engaging in intentional and willful acts, before the effective date of his resignation from Tempus, calculated to secure advantage to himself and Cambridge, and to cause Tempus damage by misappropriating and disclosing Tempus' Confidential Information.  These actions included, without limitation, appropriating for himself and, on information and belief, disclosing Tempus' Confidential Information.

67.     Ward, upset by what he viewed as unfair reduction in his commission opportunities, acted with malice and with the unlawful purpose of causing damage and loss to Tempus.

68.     As a direct and proximate result of the actions of Ward, Tempus has suffered and continues to suffer damages.

69.     Tempus is therefore entitled to a judgment against Ward for compensatory damages, punitive damages, and such other and further relief as the Court deems fair, just, and equitable

## COUNT III

### VIOLATION OF DISTRICT OF COLUMBIA UNIFORM TRADE SECRETS ACT, D.C. Code §§ 36-401 − 36-410
**(Against Defendants Ward And Cambridge)**

70.     Tempus restates and incorporates by reference the allegations contained in Paragraphs 1 through 69 hereof as if fully set forth herein.

71.     The Client List is a compilation of information regarding the contact information for current and prospective clients of Tempus.

72.    The Proprietary Sales Process Documents represent methods and techniques for selling Tempus' services to its customers.

73.    The Client List and Proprietary Sales Process Documents are valuable because they are not generally known to the public.

74.    Tempus undertakes reasonable efforts to maintain the secrecy of both the Client List and the Proprietary Sales Process Documents by, among other things, requiring its employees to enter into the Confidentiality Agreement.

75.    Consequently, the Client List and Proprietary Sales Process Documents are protected Trade Secrets under the D.C. Uniform Trade Secret Act.  *See* D.C. Code § 36-401.

76.    Ward wrongfully misappropriated the Client List and Proprietary Sales Process Documents when he acquired those documents using improper means, by, among other things, emailing himself copies of those documents because such actions breached his contractual and common law duties to maintain the secrecy of those documents.

77.    Ward and Cambridge further wrongfully misappropriated the Client List and Proprietary Sales Process Documents each time Ward has used those documents on behalf of Cambridge because Defendants knew they were acquired using improper means and under circumstances giving rise to a duty to maintain secrecy.

78.    As a result of Defendants' wrongful misappropriation, Tempus has suffered damages in lost revenue from clients and prospective clients who were solicited using the contact information on the Client List.

79.    On information and belief, Defendants have been unjustly enriched from the clients and prospective clients on the Client List who were improperly solicited; and from revenue generated by Defendants by using the Proprietary Sales Process Documents.

80.     Defendants' misappropriation was willful and malicious.

81.     Pursuant to D.C. Code § 36-402, Tempus is entitled to permanent injunctive relief prohibiting Defendants from any further use or dissemination of Tempus' trade secrets.

82.     Pursuant to D.C. Code §§ 36-403 and 36-404, Tempus is entitled to a judgment against Defendants in the amount of: (i) Tempus' lost revenue; (ii) Defendants' unjust enrichments; (iii) exemplary damages in the amount of double the award of its lost revenue and Defendants' unjust enrichment; and (iv) Tempus' reasonable attorneys' fees.

## COUNT IV

### VIOLATION OF FEDERAL DEFEND TRADE SECRETS ACT
### 18 U.S.C. § 1836
**(Against Defendants Ward And Cambridge)**

83.     Tempus restates and incorporates by reference the allegations contained in Paragraphs 1 through 82 hereof as if fully set forth herein.

84.     The Client List is a compilation of information regarding the contact information for current and prospective clients of Tempus.

85.     The Proprietary Sales Process Documents represent methods and techniques for selling Tempus' services to its customers.

86.     The Client List and Proprietary Sales Process Documents are valuable because they are not generally known to the public.

87.     Tempus undertakes reasonable efforts to maintain the secrecy of both the Client List and the Proprietary Sales Process Documents by, among other things, requiring its employees to enter into the Confidentiality Agreement.

88.     Consequently, the Client List and Proprietary Sales Process Documents are protected Trade Secrets under the Defend Trade Secrets Act. *See* 18 U.S.C. § 1839.

89.     Ward wrongfully misappropriated the Client List and Proprietary Sales Process Documents when he acquired those documents using improper means, by, among other things, emailing himself copies of those documents because such actions breached his contractual and common law duties to maintain the secrecy of those documents.

90.     Ward and Cambridge further wrongfully misappropriated the Client List and Proprietary Sales Process Documents each time Ward has used those documents on behalf of Cambridge because Defendants knew they were acquired using improper means and under circumstances giving rise to a duty to maintain secrecy.

91.     As a result of Defendants' wrongful misappropriation, Tempus has suffered damages in lost revenue from clients and prospective clients who were solicited using the contact information on the Client List.

92.     On information and belief, Defendants have been unjustly enriched from the clients and prospective clients on the Client List who were improperly solicited; and from revenue generated by Defendants by using the Proprietary Sales Process Documents.

93.     Defendants' misappropriation was willful and malicious.

94.     Pursuant to 18 U.S.C. § 1836(b)(3)(A), Tempus is entitled to permanent injunctive relief prohibiting Defendants from any further use or dissemination of Tempus' trade secrets.

95.     Pursuant to 18 U.S.C. § 1836(b)(3)(B)-(D), Tempus is entitled to a judgment against Defendants in the amount of: (i) Tempus' lost revenue; (ii) Defendants' unjust enrichments; (iii) exemplary damages in the amount of double the award of its lost revenue and Defendants' unjust enrichment; and (iv) Tempus' reasonable attorneys' fees.

## COUNT V

### <u>BREACH OF CONTRACT</u>
**(Against Defendant Ward For Breaching Sections 5(i) –(vii)
of the Confidentiality Agreement)**

96.     Tempus restates and incorporates by reference the allegations contained in Paragraphs 1 through 95 hereof as if fully set forth herein.

97.     Despite Ward's contractual obligations under Section 5 of the Confidentiality Agreement to not "sell, offer to sell, or solicit any orders" to sell services competitive with the services he sold at Tempus to any Tempus customers to which he had sold services on behalf of Tempus, prior to the expiration of the 16 month restricted period, Ward, on behalf of Cambridge, contacted several Tempus customers to offer services competitive with those provided by Tempus.

98.     Some of these customers notified Tempus of the Ward solicitation and either indicated their intent to switch their business to Ward's new company, Cambridge, or used the Ward solicitation as a means of negotiating lower rates with Tempus.

99.     After Tempus sent a letter to Ward advising him of his breaches and seeking his commitment to cease-and-desist such breaches, the General Counsel of Cambridge, who indicated that she would be responding on behalf of Ward to the Tempus's letter, asserted that Section 5 of the Confidentiality Agreement was not valid and that there was no reason for Ward to cease such solicitations.

100.    On information and belief, following Ward's initial solicitations in April 2019, and in light of the response of Cambridge's General Counsel in rejecting the enforceability of Section 5(i)-(vii) of the Confidentiality Agreement, Ward continued to persist in soliciting Tempus customers to offer competitive services on behalf of Cambridge.

101.     As a result of his contractual breaches, Ward has caused: (i) the diversion of Tempus resources to efforts to halt Ward's breaches; (ii) the reallocation of additional Tempus resources to Tempus clients improperly solicited by Ward; (iii) the diversion of client income from Tempus to Cambridge; and (iv) harm to Tempus' business reputation and goodwill.

102.     Tempus is therefore entitled to a judgment against Ward for compensatory damages, and reasonable attorneys' fees; as well as permanent injunctive relief requiring Ward to abide by the restrictions in Section 5 for a full 16-month period of time, and such other and further relief as the Court deems fair, just, and equitable.

## COUNT VI

### TORTIOUS INTERFERENCE WITH CONTRACT
### (Against Defendant Cambridge)

103.     Tempus realleges and incorporates by reference the foregoing Paragraphs 1 through 102 hereof as if fully set forth herein.

104.     Tempus has an economic interest in maintaining the integrity of its Confidentiality Agreements with its employees and ex-employees, including Ward.

105.     The Confidentiality Agreement between Ward and Tempus is an enforceable contract between parties.

106.     Cambridge knew that Ward had executed the Confidentiality Agreement.

107.     Despite its knowledge of his obligations under the Confidentiality Agreement, Cambridge allowed Ward to knowingly breach his contract with Tempus with impunity in order to benefit Cambridge at Tempus' expense.

108.     The wrongful actions of Cambridge aided and abetted Ward in the breach of his contract with Tempus.

109.   Cambridge knew that its wrongful actions would result in interference with Ward's Confidentiality Agreement, and undertook such actions intentionally and without legal justification or excuse.

110.   Such actions by Cambridge were willful, intentional, and malicious, resulting in tortious interference by improper and unlawful means.

111.   Cambridge's intentional interference has resulted in: (i) the diversion of Tempus resources to efforts to halt Ward's breaches of contract; (ii) the reallocation of additional Tempus resources to Tempus clients improperly solicited by Ward; (iii) the diversion of client income from Tempus to Cambridge; and (iv) harm to Tempus' business reputation and goodwill.

112.   Tempus is therefore entitled to judgment against Cambridge for compensatory damages, punitive damages, and such other and further relief as the Court deems fair, just, and equitable.

## COUNT VII

### TORTIOUS INTERFERENCE WITH TEMPUS's
### BUSINESS RELATIONS WITH ITS CUSTOMERS
### (Against Ward and Cambridge)

113.   Tempus realleges and incorporates by reference the foregoing Paragraphs 1 through 112 hereof as if fully set forth herein.

114.   Ward and Cambridge are attempting to induce and, if not restrained, will continue to seek to induce clients of Tempus to divert existing and future business and business opportunities from Tempus to themselves without legal justification or excuse.

115.   As a direct result of Ward's and Cambridge's wrongful acts, there is a substantial risk that Tempus has lost, and/or will lose, business and business opportunities.

116. Ward and Cambridge acted with malice and with the unlawful purpose of causing damage and loss to Tempus.

117. Tempus is therefore entitled to judgment against Ward and Cambridge for compensatory damages, punitive damages, and such other and further relief as the Court deems fair, just, and equitable.

## **PRAYER FOR RELIEF**

WHEREFORE, Tempus request this Court enter judgement in its favor and against Defendants as follows:

(A) Actual damages in an amount to be determined at trial, but not less than $100,000;

(B) Unjust enrichment damages in an amount to be determined at trial;

(C) Exemplary damages in amount to be determined at trial, but not less than $200,000;

(D) Punitive damages in the amount of $300,000;

(E) Attorneys' fees and costs incurred by Tempus in prosecuting this action;

(F) Permanent injunctive relief requiring Ward to abide by the restrictions set forth in Section 5 of the Confidentiality Agreement for a full 16-month period of time;

(G) Permanent injunctive relief prohibiting further use or dissemination of Tempus' trade secrets by Defendants; and

(H) Such other further legal and equitable relief as may be appropriate under the circumstances.

Dated: August 27, 2019                    Respectfully submitted,

_/s/ Edward Lee Isler_____
Edward Lee Isler, DC Bar No. 417076
Micah E. Ticatch, DC Bar No. 1005398
Emilie S. Adams, DC Bar No. 1006588
ISLER DARE, P.C.
1945 Old Gallows Road, Suite 650
Vienna, Virginia 22182
Phone: (703) 748-2690

Fax: (703) 748-2695
eisler@islerdare.com
mticatch@islerdare.com
eadams@islerdare.com

*Counsel for Plaintiff Tempus, Inc.*